IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ALI S. MUHAMMAD, | : | CIVIL ACTION NO. |
| | : | 1:17-CV-4330-MLB-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DEUTSCHE BANK NATIONAL | : | |
| TRUST CO., *et al.*, | : | **NON-FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff Ali S. Muhammad filed the above-captioned action *pro se* on

October 31, 2017. Plaintiff alleges that Defendants Deutsche Bank National Trust

Company, JPMorgan Chase Bank, Select Portfolio Servicing, Inc., Rubin Lublin,

LLC, and Peter Rubin have attempted to conduct a "wrongful foreclosure" of the

Plaintiff's property, and Plaintiff asserts various claims arising out of that alleged

attempted wrongful foreclosure.

The action is now before the Court on the Motion to Dismiss [7] filed by

Defendant Rubin Lublin, LLC ("Rubin Lublin"); the Motion to Dismiss [8] filed by

Defendants Deutsche Bank National Trust Company ("Deutsche Bank") and Select

Portfolio Servicing, Inc. ("SPS"); and the Motion to Dismiss [21] filed by Defendant

JPMorgan Chase Bank ("Chase"). For the reasons set forth below, the undersigned

**RECOMMENDS** that the Motions to Dismiss [7][8][21] be **GRANTED** and that

the Plaintiff's claims against Defendants Deutsche Bank, SPS, Chase, and Rubin Lublin be **DISMISSED** on the ground that *res judicata*, or claim preclusion, bars some of the Plaintiff's claims, and issue preclusion bars the remaining claim.

Plaintiff is also **ORDERED** to show cause in writing, within **twenty-one (21) days** of the date of this Order, why his claims against Defendant Peter Rubin should not be dismissed for failure to serve.

## I.    BACKGROUND

### A.    *Plaintiff's Previous Actions*

It appears to be undisputed that Plaintiff has filed numerous previous actions regarding an attempted foreclosure of his property located at 1560 Ravens Run, Jonesboro, Georgia 30236 (the "Property"). According to Defendant Rubin Lublin, this case represents at least the *seventh* attempt by Plaintiff to prohibit a foreclosure sale of the Property. Def. Br. [7-1] at 2. According to Defendants Deutsche Bank and SPS, this is the Plaintiff's fourth case regarding an attempted foreclosure of the Property and the third case filed in this court. Defs. Br. [8-1] at 1.

For the purpose of resolving the Defendants' Motions to Dismiss, the Court finds it necessary to discuss only the Plaintiff's two prior actions filed in this Court, and will not address his cases filed in other courts. On January 13, 2015, Plaintiff filed an action in this Court against Defendants Chase, Jamie Dimon (CEO of Chase), SPS, Rubin Lublin, and Wargo French LLP ("Wargo French"). *See*

*Muhammad v. Dimon, et al.*, Civil Action No. 1:15-CV-0107-AT-ECS, N.D.Ga. ("*Muhammad I*"). Plaintiff alleged in *Muhammad I* that Plaintiff, Plaintiff's company Columbia Hills Management Company, Inc. ("CHMC"), and Chase had entered into a Settlement Agreement in 2012 (the "Settlement Agreement"), in which Plaintiff transferred ownership of certain property to Chase. *See Muhammad I* Order [70] dated July 30, 2015 ("*Muhammad I* Final Order") at 1. Plaintiff acknowledged that he also executed an addendum to the Settlement Agreement (the "Addendum"), which provided that the Property at issue in this case (the Ravens Run Property) was not transferred to Chase, and Chase was authorized to institute foreclosure proceedings as to that Property. *Id.* Plaintiff alleged that after the execution of the Settlement Agreement and Addendum, he received a notice of foreclosure regarding the Ravens Run Property in 2015. *Id.*

In *Muhammad I,* Plaintiff alleged violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and several state law claims, including claims for fraud and attempted wrongful foreclosure, and a claim under the Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. §§ 10-1-390 *et seq. Id.* at 2, 8; *see also Muhammad I* complaint. On July 30, 2015, District Judge Amy Totenberg granted the Defendants' Motions to Dismiss and dismissed all of the Plaintiff's claims on the ground that the Plaintiff had failed to state a claim on any of the legal theories

3

presented because Plaintiff acknowledged that Chase had retained the right to foreclose on the Property. *Id.* at 13-14.

Subsequently, on December 29, 2015, Plaintiff filed a second action, this time asserting claims against Defendants Chase, Wargo French, Rubin Lublin, SPS, and Deutsche Bank. *See Muhammad v. JPMorgan Chase Bank, USA, et al.*, Civil Action No. 1:15-CV-4479-AT-WEJ, N.D.Ga. ("*Muhammad II*"). In *Muhammad II*, Plaintiff asserted claims for breach of contract, declaratory relief, violations of the FDCPA and the Federal Trade Commission Act ("FTC Act"), quiet title, fraud, a cause of action to set aside and vacate a foreclosure, violations of the Georgia FBPA, and violations of the Real Estate Settlement Procedures Act ("RESPA"). *See Muhammad II* Order [41] dated June 20, 2016 ("*Muhammad II* Final Order") at 5.

On June 20, 2016, Judge Totenberg granted the Defendants' Motions to Dismiss and dismissed the Plaintiff's claims in *Muhammad II*, stating that the "second lawsuit treads most of the same ground" as *Muhammad I*, and thus, "[t]he Court finds that nearly the entirety of Plaintiff's Complaint is barred by claim preclusion." *Id.* at 2, 3. She further stated that the Plaintiff's claims brought in *Muhammad II* "are either the exact same claims from the last suit, or old claims in new clothes." *Id.* at 5.

Although Plaintiff argued that his claims were not the same as the previous action because he had asserted a claim of fraud and he had also discovered a "new"

RESPA claim, Judge Totenberg rejected that argument. *Id.* at 6. She stated that "these claims were already litigated in the suit filed in January of 2015, and were disposed of when the Court dismissed Plaintiff's complaint in that case with prejudice. They dealt with a common issue: who possessed the right to foreclose on Plaintiff's home." *Id.* Further, to the extent that Plaintiff included a "new" RESPA claim against SPS based on its alleged failure to respond to a "Qualified Written Request," Judge Totenberg adopted the recommendation of Magistrate Judge Walter E. Johnson that Plaintiff's RESPA claim be dismissed for failure to state a claim because Plaintiff had not alleged any facts indicating that he suffered any damages from the alleged failure of SPS to respond to the Qualified Written Request. *Id.* at 8-9.

B.    *Plaintiff's Current Allegations*

Undaunted by the dismissal of his previous two cases, Plaintiff filed the Complaint [1] initiating this action on October 31, 2017. The following allegations are taken from the Plaintiff's Complaint and are assumed to be true for the purpose of this discussion, unless otherwise noted. Plaintiff alleges that he is the owner of the subject Property located at 1560 Ravens Run, Jonesboro, Georgia 30236. Comp. [1] at ¶ 8. He asserts claims against Chase, Deutsche Bank, SPS, Rubin Lublin, and Peter Rubin "for Quiet Title, for violations of RESPA, Dodd-Frank and the Georgia Fair Business Practices Act and to enjoin a threatened Wrongful Non-Judicial

Foreclosure and for other relief." *Id.* at ¶ 1. Plaintiff asserts few facts in the Complaint that provide factual support for these claims. In particular, he does not allege any facts regarding the circumstances of his mortgage loan or the Settlement Agreement with Chase that was the subject of the previous actions, nor does he include any facts indicating that Chase, or any other entity named as a Defendant in this case, notified him that it intended to conduct a foreclosure sale of the Property on a specific date.

In support of his claim of quiet title in Count I of the Complaint, Plaintiff alleges that he brings this action "to determine all adverse claims and to remove clouds on Plaintiff's Title, including but not limited to, the Security Deed, the assignments of Mortgage/Security Deed, which are false, fraudulent and fabricated instruments created and recorded in anticipation of foreclosure and in violation of Georgia law." *Id.* at ¶ 9.

In support of his claim for "violation of RESPA/Dodd-Frank" in Count II of the Complaint, Plaintiff alleges that he sent a "Qualified Written Request" ("QWR") to Defendant SPS on October 5, 2017, but SPS violated RESPA and the "Dodd-Frank amendments" by failing to "provide said information and documents, correct Plaintiff's account, including crediting any late charges, penalties, as well as transmit to the Borrower a written notification of correction and provide the name

and telephone number of a representative of the servicer who can provide assistance to the borrower within thirty (30) days." *Id.* at ¶ 15.

In support of his claim for "deceptive and unfair practices" brought under the Georgia FBPA in Count III of the Complaint, Plaintiff alleges that all of the Defendants engaged in "deceptive acts and practices," including claiming to be "the valid owner and holder of Plaintiff's original promissory note and/or Security Deed, when they were not, and represented that it or they had the legal standing and ability to collect payments under the promissory note and to foreclose the Security Deed, when it and they did not." *Id.* at ¶ 19.

In Count IV of the Complaint,[1] Plaintiff also asserts a claim for "emergency TRO to enjoin wrongful foreclosure sale." *Id.* at ¶¶ 21-26. On November 1, 2017, District Judge Leigh Martin May entered an Order [6] denying Plaintiff's request for a temporary restraining order ("TRO") on the ground that Plaintiff failed to file a separate motion for a TRO, and also on the ground that Plaintiff failed to allege any facts showing that there was any currently scheduled foreclosure sale to enjoin. *See* Order [6] at 1-2.

---

[1] Plaintiff labels this count as a second "Count III," but it is the Plaintiff's fourth and final Count in the Complaint. *See* Comp. [1] at 9-13.

7

## II.   DISCUSSION

### A.   *Standard on a Motion to Dismiss*

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff, however, may not merely plead facts in a complaint sufficient to find a claim to relief is conceivable; instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Defendants have moved to dismiss the Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*; *see also Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008); Fed.R.Civ.P. 8(e) ("Pleadings must be construed so as to do justice"). A court may not, however, rewrite inadequate pleadings—including those

filed by *pro se* plaintiffs—to plead essential allegations. *See Pontier v. City of Clearwater, Fla.*, 881 F. Supp. 1565, 1568 (M.D. Fla. 1995). Moreover, although a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted factual inferences."*Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency accorded a *pro se* filing excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002).

As noted above, a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), but when a plaintiff has referred to documents in the complaint and such documents are central to the plaintiff's claims, a court may consider those documents as part of the pleadings in the case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

In this case, Plaintiff has attached various documents to his Complaint, including correspondence he mailed to SPS, Rubin Lublin, and Jamie Dimon dated October 5, 2017, that he alleges was a "Qualified Written Request" under RESPA.

*See* Comp., Ex. D. Because Plaintiff has attached those documents to the Complaint, they may be considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.*; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (citation omitted)); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

Moreover, the Court may also take judicial notice of the records in the Plaintiff's prior actions in resolving the Defendants' Motions to Dismiss. *See Horne v. Potter*, 392 Fed. App'x 800, 802 (11th Cir. 2010) (*per curiam*) (noting that a district court may take judicial notice of public records that are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.") (*citing* Fed. R. Evid. 201(b).))

   B.    *Res Judicata*

   The Defendants first argue that the Plaintiff's claims in this action must be dismissed under the *res judicata* doctrine. Under the principle of *res judicata*, or claim preclusion, a final judgment on the merits in a civil action operates to preclude a party, or those in privity with that party, from re-litigating in a subsequent proceeding issues that were or could have been raised in the original action. *Federated Dep't Stores, Inc., v. Moitie*, 452 U.S. 394, 398 (1981); *see Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998). The doctrine is "a rule of fundamental and substantial justice, of public policy and of private peace," operating to protect defendants against duplicative litigation over the same claims, and accordingly, may not be overridden based on equitable considerations. *Federated Dep't Stores,* 452 U.S. at 401 (internal quotation omitted). "The doctrine of *res judicata* is one of finality, providing that a final judgment rendered by a court

12

of competent jurisdiction on the merits is conclusive as to the rights and responsibilities of the parties and their privies. As to the parties in the prior proceeding and their privies, *res judicata* constitutes an absolute bar to a subsequent judicial proceeding involving the same cause of action." *Baptiste v. IRS*, 29 F.3d 1533, 1539 (11th Cir. 1994).

Federal courts apply state law to questions of *res judicata*. *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990). In Georgia, the doctrine of *res judicata* applies if the following four elements are present: (1) there is a final judgment on the merits in the first action; (2) the first decision was rendered by a court of competent jurisdiction; (3) the parties to both actions, or those in privity with them, are identical; and (4) the causes of action in both suits are identical, or the claims asserted in both suits arise out of the same events or the same nucleus of facts. *Laskar v. Peterson*, 771 F.3d 1291, 1300 (11th Cir. 2014); *Pleming*, 142 F.3d at 1356-57. Significantly, *res judicata* does not bar only those claims actually raised in the first suit; it also bars those claims which the plaintiff could have raised in the prior suit, if those claims arise out of the same transactions or events at issue in the prior suit. *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. 2000). A court may consider the defense of *res judicata* in a motion to dismiss filed pursuant to Rule 12(b)(6) when the existence of the defense can be judged from the face of the complaint. *Starship Enter. of Atlanta, Inc. v. Coweta*

*Cnty.*, 708 F.3d 1243, 1253 n.13 (11th Cir. 2013). The court may also take judicial notice of another court's orders in doing so. *See Tuscano v. Evening Journal Assoc.*, 179 Fed. App'x 621, 623 n.3 (11th Cir. 2006).

As discussed above, Plaintiff's claims in *Muhammad II* against Defendants Chase, Wargo French, Rubin Lublin, SPS, and Deutsche Bank were dismissed by Judge Totenberg primarily on the ground of *res judicata*, as the claims arose out of the same transactions or events that were at issue in *Muhammad I*. Judge Totenberg held that the "second lawsuit treads most of the same ground" as *Muhammad I*, and thus, "[t]he Court finds that nearly the entirety of Plaintiff's Complaint is barred by claim preclusion." *Id.* at 2, 3. She further stated that the Plaintiff's claims brought in *Muhammad II* "are either the exact same claims from the last suit, or old claims in new clothes." *Id.* at 5. The undersigned finds that Plaintiff's claims in this case are subject to dismissal for the exact same reason: the claims continue to deal with the same common issue of who possessed the right to foreclose on Plaintiff's home.

Upon a review of Plaintiff's claims, the Court finds that the elements of *res judicata* are met. First, there is no question that *Muhammad I* and *Muhammad II* reached final judgment, by a court of competent jurisdiction. Second, it is clear that some of the Plaintiff's claims are identical to claims raised in the two previous cases filed in this Court. Plaintiff asserts a claim for quiet title, which was a claim that he previously asserted, and was dismissed, in *Muhammad II*. Plaintiff also brings a

claim under the Georgia FBPA, a claim which he previously asserted, and was dismissed, in both *Muhammad I* and *Muhammad II*. The basis of the Plaintiff's Complaint in this case is that he continues to attempt to challenge and litigate the Defendants' "standing" or right to enforce the security deed and foreclose on Plaintiff's Ravens Run Property, a claim that was expressly rejected in the prior two actions in this Court.

There is also no dispute that this case involves largely the same parties that were involved in both *Muhammad I* and *Muhammad II*. The Plaintiff named Chase, SPS, and Rubin Lublin as Defendants in *Muhammad I*, and he named Chase, Deutsche Bank, SPS, and Rubin Lublin as Defendants in *Muhammad II*. In this case, Plaintiff dropped the law firm of Wargo French as a Defendant and added an individual, "Peter Rubin."[2] But as Plaintiff alleges no facts in the Complaint against "Peter Rubin" individually, he has not shown, nor does he offer any argument, that "Peter Rubin" was not acting in privity with the other Defendants. "'Privity' is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *E.E.O.C. v. Pemco*

---

[2] Plaintiff's claims against Peter Rubin are discussed *infra*. According to Defendant Rubin Lublin, there is no individual named "Peter Rubin" employed at the law firm, and Plaintiff appears to have mixed up the names of two name partners: Peter Lublin and Glen Rubin. *See* Def. Br. [7-1] at 1 n.1.

*Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir. 2004). Because the allegations of Plaintiff's Complaint suggest that "Peter Rubin" is an individual employed by Rubin Lublin (*see* Comp. at ¶ 5), the undersigned finds that "Peter Rubin" would be in privity with Rubin Lublin, which was a named Defendant in both *Muhammad I* and *Muhammad II*. *Cf. Graham v. CitiMortgage*, No. 1:14-CV-1476-AT, 2014 WL 12360943, *3 (N.D.Ga. September 23, 2014) (a foreclosure law firm and the bank it represented were in privity for *res judicata* purposes).

Most importantly, both *Muhammad I* and *Muhammad II* also involved the same fundamental question at issue in this case, that is, whether the Defendants had standing to foreclose on Plaintiff's property. And this question was answered decisively against Plaintiff in both cases. Accordingly, the Court finds that Plaintiff's claim of quiet title in Count I of the Complaint, and his claim for a violation of the Georgia FBPA in Count III of the Complaint, must be dismissed on *res judicata* grounds.

In response to the Defendants' arguments that his claims are barred by the principle of *res judicata*, Plaintiff argues that there is an exception to *res judicata* "based upon fraud, deception, accident, or mistake." Pl. Br. [20-1] at 9. According to Plaintiff, because he alleges that the Defendants engaged in "fraud," the "Defendant cannot use its fraud to shield it from liability." *Id.* at 8. Plaintiff contends that "the

underlying assignment of the security deed in this case was and is a false, forged, fraudulent and fabricated document."[3] *Id.*

The Supreme Court has held that "[a] judgment of a court having jurisdiction of the parties and of the subject-matter operates as *res judicata*, in the absence of fraud or collusion, even if obtained upon a default." *Riehle v. Margolies*, 279 U.S. 218, 225 (1929). In this case, however, the Plaintiff does not allege that the judgment that was entered against him in either *Muhammad I* or *Muhammad II* was the result of "fraud or collusion." Instead, he argues that the Defendants engaged in fraud when they participated in the assignment of his security deed on the Property. But as discussed above, Plaintiff's claim of fraud regarding the Defendants' attempt to foreclose on his Property was previously litigated in both *Muhammad I* and *Muhammad II*, and the Court found in favor of the Defendants in both cases. Furthermore, in *Muhammad II*, the Plaintiff even made the same argument that the Defendants' alleged "fraud" was an exception to the rule of *res judicata*, an argument which was rejected by the Court. *See* Report and Recommendation [32] dated April 22, 2016, in *Muhammad II*, at 11-12. Thus, the Court rejects the

---

[3] Plaintiff's claims are premised on Chase's alleged invalid standing to foreclose in light of alleged defects in the chain of assignments, its lack of possession of the original promissory note, and other arguments that have been roundly rejected by federal and state courts. *See You v. JP Morgan Chase Bank*, 743 S.E.2d 428, 431 (Ga. 2013); *Montgomery v. Bank of Am.*, 740 S.E.2d 434, 438 (Ga. 2013); *Haynes v. McCalla Raymer LLC*, 793 F.3d 1246, 1251 (11th Cir. 2015).

17

Plaintiff's argument that his claim that the Defendants engaged in "fraud" in attempting to foreclose on his Property provides an exception to the well-settled principle of *res judicata*.

Alternatively, Defendants argue that Plaintiff's claims are barred by collateral estoppel. The doctrine of collateral estoppel, or issue preclusion, bars the relitigation of discrete issues. Collateral estoppel requires that the issue in the second suit be: (1) identical to an issue in the former action; (2) litigated and determined by the parties, and (3) necessarily so determined. *See Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1245 (11th Cir. 1991). Collateral estoppel thus differs from *res judicata* in that the former "applies to particular issues that have been contested and resolved," while the latter "applies to whole claims, whether litigated or not." 18 *Moore's Federal Practice* §131.13[1] (Matthew Bender 3d Ed.). To the extent that Plaintiff bases his claims in this action on the same issue litigated in the prior cases—that Chase did not have the authority to foreclose on the Property—the Plaintiff's claims would also be barred by collateral estoppel or issue preclusion.

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [7][8][21] be **GRANTED** as to Counts I and III of the Complaint, and that Plaintiff's quiet title claim and FBPA claim be **DISMISSED** on the ground that *res judicata* bars those claims.

As discussed above, Judge Totenberg found in *Muhammad II* that Plaintiff had asserted one new claim that had not been asserted in *Muhammad I*: a claim against Defendant SPS under RESPA based on Plaintiff's allegation that SPS had failed to respond to a "Qualified Written Request" ("QWR"). Similarly, there is one claim that Plaintiff asserts in this case that appears to be based on events that post-dated the allegations of the previous case: Plaintiff again alleges that Defendant SPS violated "RESPA/Dodd-Frank" when it failed to respond to a QWR that Plaintiff alleges he sent to SPS on October 5, 2017, which was after Judge Totenberg dismissed *Muhammad II* on June 20, 2016. For the same reasons explained by Judge Totenberg in *Muhammad II*, Plaintiff has also failed to allege sufficient facts to state a claim under RESPA in this case.

C.   *Plaintiff's RESPA Claim*

In Count II of the Complaint, Plaintiff has asserted a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq*. It appears that Plaintiff has asserted this claim only against Defendant SPS, who apparently was the servicer of Plaintiff's mortgage. Plaintiff alleges that he sent a "Qualified Written Request" ("QWR") to Defendant SPS on October 5, 2017, but SPS violated RESPA and the "Dodd-Frank amendments" by failing to "provide said information and documents, correct Plaintiff's account, including crediting any late charges, penalties, as well as transmit to the Borrower a written notification of correction and

19

provide the name and telephone number of a representative of the servicer who can provide assistance to the borrower within thirty (30) days." Comp. at ¶ 15.

Congress enacted RESPA in an effort to provide consumers with more information on the nature and costs of real estate transactions, and to prevent consumers from falling prey to abuses and unnecessarily high costs. *See McCarley v. KPMG Intern.*, 293 Fed. App'x 719, 722 (11th Cir. 2008). RESPA provides that those making and/or servicing a mortgage loan must make certain disclosures relating to the servicing of the loan. 12 U.S.C. §§ 2605(a), (b). The lender must disclose, at the time of application, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding. 12 U.S.C. § 2605(a). Further, the loan servicer must generally notify the borrower of any assignment, sale or transfer of the servicing of the loan within 15 days before the effective date. *Id.* at § 2605(b). RESPA does not require notice when the underlying note or mortgage is transferred.

In addition to these automatic disclosures, RESPA requires that a loan servicer respond to a Qualified Written Request ("QWR") from a borrower that meets certain requirements and that seeks "information relating to the servicing of such loan." 12 U.S.C. § 2605(e); *see also* 24 C.F.R. § 3500.21(e). Moreover, RESPA creates a private right of action for only three types of wrongful acts: (1) payment of a kickback and unearned fees for real estate settlement services,

12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a QWR for information about a loan, 12 U.S.C. § 2605(f).

In order to state a violation of the QWR requirement of RESPA, a plaintiff must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to acknowledge receipt of the QWR within 20 days or substantively respond within 60 days, and (4) the plaintiff is entitled to actual or statutory damages. *See* 12 U.S.C. § 2605; *see also Frazile v. EMC Mortg. Corp.*, 382 Fed. App'x 833, 836 (11th Cir. 2010) (an allegation of damages is a necessary element of any claim under § 2605). A loan servicer who fails to respond to a qualified written request is liable for the failure, but a borrower is limited to actual damages unless the failure to respond was part of a "pattern or practice of noncompliance" with RESPA's requirements. 12 U.S.C. § 2605(f).

RESPA does not "require a servicer to respond to any question that a borrower may ask‒no matter how broad, vague, or far afield." *De Vary v. Countrywide Home Loans, Inc*., 701 F. Supp. 2d 1096, 1106 (D. Minn. 2010). For example, it is well established that debtors are not entitled to copies of original loan documents—including "wet signature" copies of notes or loan agreement—via via a

21

QWR. *See Liggion v. Branch Banking and Trust*, Civil Action No. 1:11-CV-1133-WSD, 2011 WL 3759832, at \*3 (N.D. Ga. Aug. 24, 2011) (Duffey, J.) ("Plaintiff's information document requests are not a proper qualified written request under RESPA because they do not relate to the servicing of the loan."); *see also Lawther v. Onewest Bank*, No. C10-0054RS, 2010 WL 4936797, at \*6 (N.D. Cal. Nov. 30, 2010) ("A loan servicer only has a duty to respond if the information request is related to loan servicing.") (internal citations omitted); *Jones v. PNC Bank, N.A.*, No. 10-cv-01077LHK, 2010 WL 3325615, at \*2 (N.D. Cal. Aug. 20, 2010) ("A QWR must seek information relating to the servicing of the loan; a request for loan origination documents is not a QWR.").

As one court explained, it is not sufficient for a plaintiff to allege that a letter sent to a servicer merely requested information about the loan in general; the letter must request information specifically about the servicing of the loan in order to qualify as a QWR:

> The counterclaim alleges that on April 14, 1998, the Naeems, through counsel, sent a qualified written request to MorEquity for information relating to their loan, and that MorEquity failed to respond within 60 days as required by § 2605(e). None of the irregularities alleged in the counterclaim, however, relate in any way to the "servicing" of the loan, as that term is defined in the statute. The counterclaim alleges a forged deed, and irregularities with respect to the recording of the two loans, but makes no claim with respect to improper servicing. There are no claims, for example, that MorEquity did not give the Naeems credit for any periodic payments made, which is how the statute defines servicing. According to the allegations of the counterclaim, the letter

> sought information about the validity of the loan and mortgage
> documents, but made no inquiry as to the status of the Naeem account
> balance. Therefore, the request did not relate to "servicing" of the loan,
> and Count V fails to state a claim under § 2605.

*MorEquity v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000).

Servicers are required only to respond to inquiries relating to servicing of the loan. Congress specifically defined "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). RESPA simply does not require servicers to answer inquiries on other topics.

Even if, technically, *res judicata* or claim preclusion does not bar the Plaintiff's RESPA claim in this case because the QWR at issue post-dated *Muhammad II*, the related doctrine of issue preclusion still applies. Plaintiff attached to his Complaint a copy of the correspondence dated October 5, 2017, that he alleges was a QWR that he sent to SPS. *See* Comp., Ex. D. A review of the Plaintiff's claims in *Muhammad II* reveals that Plaintiff made the identical argument against SPS in that case regarding a similar "QWR," and Magistrate Judge Johnson rejected the Plaintiff's argument that the letter in question qualified as a QWR:

> The purported QWR . . . does not satisfy the statutory requirements
> because its statement alleging "legal violations" in plaintiff's account
> does not identify the error or the reasons plaintiff believes his account

> is in error, and is thus too broad to provide SPS with the information
> it needs to investigate and address plaintiff's concerns. In addition, the
> purported QWR letter contains a long list of unsupported demands for
> documents and information regarding issues that are not related to the
> servicing of the loan.

Report and Recommendation [32] dated April 22, 2016, in *Muhammad II*, at 27.

Because these identical legal issues were raised and resolved in *Muhammad II*, issue preclusion bars Plaintiff from attempting to re-litigate the same issue now by simply re-submitting the same or materially similar demand. The RESPA claim should be dismissed on this basis. Said another way, SPS has shown that Plaintiff's alleged QWR sent on October 5, 2017 that forms the subject of his RESPA claim in this case is merely duplicative of the same alleged QWR from December of 2015 that formed the basis of his RESPA claim in *Muhammad II*. Plaintiff cannot keep sending the same alleged "QWR" over and over and demanding that SPS respond every time.

In any event, the Court finds that, to the extent that Plaintiff's RESPA claim is not barred by either claim preclusion or issue preclusion, the claim nevertheless fails because Plaintiff does not allege any facts sufficient to establish that the request that he sent to SPS on October 5, 2017, met the requirements of a valid QWR. Upon review of the alleged QWR, the Court finds that majority of the information demanded in that letter falls outside of the scope of a valid QWR. In particular, Plaintiff demands that SPS provided a whole range of information regarding the

origination of the loan, which would clearly fall outside the definition of "servicing" issues. For example, Plaintiff demands documents showing that his mortgage loan was "originated in lawful compliance with all federal and state laws," and that "all appropriate disclosures of terms, costs, commissions, rebated, kickbacks, fees, etc. Were [sic] properly disclosed to me at the inception of this loan." Comp., Ex. D.

Finally, even if a technical violation of RESPA could be discerned, Plaintiff has alleged no facts in the Complaint that would establish entitlement to any relief. He alleges no facts to suggest the existence of actual damages, or a policy and practice of repeated violations such as to warrant an award of statutory damages. It is also well established that, just like the FDCPA, "RESPA provides for neither equitable nor injunctive relief, including relief from foreclosure." *Malally v. BAC Home Loan Servicing, LLC*, 2010 WL 5140626, at *9 n.13 (N.D. Ga. Oct. 8, 2010), *report and recommendation adopted*, 2010 WL 5140031 (N.D. Ga. Dec. 13, 2010). Dismissal of the Plaintiff's RESPA claim is warranted on this basis alone, as Judge Totenberg also held when she dismissed Plaintiff's RESPA claim in *Muhammad II*. *See Muhammad II* Final Order at 8-9.[4]

---

[4] Normally, if the only deficiency were a failure to allege facts to demonstrate damages or other matters that may be cured by more complete factual allegations, the Court would recommend allowing a *pro se* plaintiff leave to amend. In this case, however, allowing Plaintiff leave to amend his RESPA claim would be futile because the claim is barred by issue preclusion, and because the Court finds that the letter itself, which is in the record, is not a proper QWR as a matter of law. Moreover, Plaintiff is a repeat filer who has, in particular, pleaded this exact or

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [7][8][21] be **GRANTED** as to Count II of the Complaint and that Plaintiff's RESPA claim be **DISMISSED** on the ground that issue preclusion bars this claim, and also because Plaintiff has failed to allege sufficient facts to state a claim for relief under "RESPA/Dodd-Frank."

D.     *Other Claims*

In Plaintiff's response brief [20] filed in opposition to the Motion to Dismiss [7] filed by Rubin Lublin and the Motion to Dismiss [8] filed by Deutsche Bank and SPS, Plaintiff includes numerous factual allegations regarding his mortgage loan that are not included in his Complaint, and also refers to various other claims, including a purported claim under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and a claim under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45, 53, and 56. *See* Pl. Br. [20-1] at 7. Plaintiff has not asserted these claims in the Complaint. The Court finds that, to the extent that Plaintiff intended to seek to amend his Complaint to assert these claims, they would be barred by *res judicata* because, as discussed above, he asserted those claims in *Muhammad II* and they were dismissed by Judge Totenberg.

---

substantially similar RESPA claim on multiple occasions. Plaintiff has done so with ample prior notice and warning as to the pleading standards and the factual deficiencies of those claims.

E.    *Plaintiff's Claims against Peter Rubin*

As noted above, Plaintiff has named "Peter Rubin" as an individual Defendant in this case. As of this date, Plaintiff has not provided any proof of service on "Peter Rubin" and "Peter Rubin" has not entered an appearance.

Rule 4(m) of the Federal Rules of Civil Procedure provides that "if a defendant is not served within 90 days after the complaint is filed, the court—on motion of its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Plaintiff filed the Complaint on October 31, 2017. Thus, the deadline for him to effect service of the summons and Complaint on the Defendants was on or about January 29, 2018.

On November 20, 2017, the Plaintiff filed a "Motion for Order Authorizing Service by Publication" [15] ("Motion for Service by Publication"), in which he requested leave to serve Defendant "Peter Rubin" by publication because, Plaintiff claimed, he "is avoiding service of process in this matter." Pl. Mot. at ¶ 2. In support of that allegation, Plaintiff attached an "Affidavit of Due Diligence" by Bruce R. Smith, Jr., which stated that he attempted to effect service on an individual named "Peter Lubin." *See* Aff., att. to Pl. Mot. Because the Plaintiff did not provide any affidavit of service indicating that he ever attempted service on "Peter Rubin," on December 14, 2017, the undersigned denied the Plaintiff's Motion for Service by

27

Publication, finding that Plaintiff had failed to establish that the individual named in the Complaint, "Peter Rubin," was avoiding service. *See* Order [19]. The undersigned further advised Plaintiff that Rubin Lublin stated that "there is no individual named Peter Rubin at Rublin Lublin, LLC." Def. Br. [7-1] at 1 n.1. Therefore, the undersigned informed Plaintiff that "it appears that the Plaintiff has filed suit against a Defendant who may not even exist." Order [19] at 2.

As of this date, almost five months have passed since the Court denied the Plaintiff's Motion for Service by Publication and advised Plaintiff that, according to Rubin Lublin, "Peter Rubin" is not employed by that law firm. In that time period, Plaintiff has not sought to amend his Complaint to correct the name of the Defendant, nor has Plaintiff requested any extension of time to serve "Peter Rubin," nor has he requested any other relief regarding his claims against "Peter Rubin."

Thus, it appears that Plaintiff's claims against "Peter Rubin" should be dismissed for failure to serve. Plaintiff is therefore **ORDERED** to show cause in writing, within **twenty-one (21) days** of the date of this Order, why his claims against Defendant Peter Rubin should not be dismissed without prejudice for failure to serve. In doing so, Plaintiff should also explain why his claims against Peter Rubin should not independently be dismissed for the reasons set forth above, or why an extension to allow him additional time to serve Peter Rubin would not be futile, in

light of the Court's recommended rulings set forth herein with regard to Plaintiff's claims against the other Defendants.

## III.   CONCLUSION AND RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that the Defendants' Motions to Dismiss [7][8][21] be **GRANTED** and that the Plaintiff's claims against Defendants Deutsche Bank, SPS, Chase, and Rubin Lublin be **DISMISSED** on the grounds that *res judicata* bars the Plaintiff's claims of quiet title and a violation of the Georgia FBPA, issue preclusion bars Plaintiff's claim under "RESPA/Dodd-Frank," and Plaintiff has also failed to state a claim under "RESPA/Dodd-Frank."

Plaintiff is also **ORDERED** to show cause in writing, within **twenty-one (21) days** of the date of this Order, why his claims against Defendant Peter Rubin should not be dismissed for failure to serve.

**IT IS SO ORDERED AND RECOMMENDED** this 11th day of May, 2018.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE